IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JESSICA R. SUND-SUMMERFIELD,

Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

Defendant.[1]

OPINION and ORDER

18-cv-800-jdp

---

Plaintiff Jessica R. Sund-Summerfield seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding her not disabled under the Social Security Act. The court agrees with Sund-Summerfield that administrative law judge (ALJ) Michael Schaefer erred when he discounted the reaching restrictions proposed by an agency examining physician and Sund-Summerfield's treating physician. These errors require remand, but Sund-Summerfield hasn't shown that she is entitled to an order directing an award of benefits as she requests.

BACKGROUND

Sund-Summerfield filed an application for disability benefits in May 2005. As this filing date suggests, Sund-Summerfield's application has a long procedural history, which the court will summarize only briefly.

---

[1] The court has changed the caption to reflect that Andrew Saul was confirmed as the Commissioner of Social Security after Sund-Summerfield filed this lawsuit.

Sund-Summerfield wrenched her right shoulder after tripping on a set of stairs in November 2002 and was diagnosed with supraspinatus tendinitis, bursitis, an anterior labral tear, and impingement, all in her right shoulder, causing shoulder ache and pain, numbness in the fingers of her right hand, an ache in her right forearm, and pain radiating from her right forearm to her right thumb. R. 128; R. 198–99; R. 214.[2] Shoulder surgery in 2004 didn't provide much relief, and she continued to report pain and restricted motion in her right shoulder. R. 129.

Sund-Summerfield applied for Social Security benefits, initially alleging that she had been disabled since April 14, 2004, but later amending her alleged disability onset date to December 1, 2011. There have been five administrative hearings in this case. After each of the first four hearings, the ALJ denied benefits, but each decision was later remanded by the Appeals Council or by this court based on the stipulation of the parties. ALJ Schaefer held Sund-Summerfield's fifth hearing in 2017. He determined that Sund-Summerfield suffered two severe impairments: a right shoulder impingement and chronic/complex regional pain syndrome. R. 567. He concluded that she had the residual functional capacity (RFC) to frequently reach from side to side and to the front with her right arm but that she could never reach above shoulder height with that arm. The RFC also included other physical restrictions not relevant to this appeal. Based on this RFC and on vocational expert testimony, the ALJ denied Sund-Summerfield's application for benefits, concluding that she could work as a cashier, sales attendant, or office helper. R. 581–82.

---

[2] Record cites are to the administrative transcript, located at Dkt. 10, Dkt. 10-1, and Dkt. 10-2.

ANALYSIS

Sund-Summerfield challenges the ALJ's decision on two grounds, contending that the ALJ should have given more weight to the restrictions proposed by an agency examining consultant, S. Danish Hasan, and a treating physician, William Beyer. She asks the court to reverse the commissioner's decision and award her benefits.

The reaching restrictions proposed by these doctors are particularly important because two vocational experts testified in Sund-Summerfield's 2013 hearing that if she were limited to occasional reaching with her right arm, she would be entirely unable to work. R. 550–52; R. 556–57. After the latest hearing, the ALJ found that Sund-Summerfield could frequently reach from side to side and to the front with her right arm. But Hasan restricted her to occasional reaching with her right arm in one portion of his report and never reaching in another, and Beyer restricted her to never reaching above shoulder level and only occasionally reaching at or below shoulder level. Because these reaching restrictions would be decisive under the vocational experts' testimony, the court need not address other restrictions discussed in the parties' briefs.

In considering the ALJ's decision to deny Sund-Summerfield's claim for benefits, the court must "determine whether [the ALJ's decision] applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). This is a deferential standard, requiring only that the ALJ's decision be based on relevant evidence that a reasonable person could find sufficient to support the decision. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

## A. Hasan's opinion

Hasan examined Sund-Summerfield in 2013. In the narrative portion of his report, he restricted her to occasional reaching with her right arm. R. 515. In the checklist portion of his report, he restricted her to never reaching with her right arm. R. 518. The ALJ noted the inconsistency between the reaching restrictions in the two portions of Hasan's report but did not cite this inconsistency as a reason for giving less weight to the report. R. 578. In any event, either restriction would preclude Sund-Summerfield from working in any jobs under the vocational experts' unchallenged 2013 testimony.

The ALJ gave "mixed weight" to Hasan's opinion overall. *Id.* He gave significant weight to Hasan's clinical findings regarding Sund-Summerfield's right arm, which included several range-of-motion limitations. *Id.* He discounted Hasan's manipulative restrictions, which included Hasan's reaching restrictions, because he said they were inconsistent with Hasan's notes and clinical findings. R. 568. The only inconsistencies he identified were a note in the narrative portion of Hasan's report stating that Sund-Summerfield "was able to perform both gross and fine manipulations," R. 513, and Hasan's clinical findings, which, according to the ALJ, demonstrated "both hand and wrist strength and range of motion abilities inconsistent with significant handling and fingering limitations," R. 578. But the ALJ did not explain why he found this information inconsistent with Hasan's manipulative restrictions. In particular, he did not explain why Hasan's clinical findings would be inconsistent with either of the reaching restrictions Hasan proposed.

The ALJ also did not specifically address Hasan's objective findings regarding weakness and decreased range of motion in her right arm, which Hasan cited as support for his restrictions. R. 515. Those findings included reduced strength in Sund-Summerfield's right

4

deltoid and bicep, difficulty dressing and undressing due to pain in her right hand and shoulder, and multiple motion limitations in her right shoulder. R. 513–14. Her right-shoulder motion was limited to 100 degrees of abduction (150 degrees being normal), 100 degrees of forward elevation (150 normal), 55 degrees of external rotation (90 normal), and zero degrees of adduction (30 normal). R. 514.

ALJs must rely on expert opinions rather than "determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The ALJ listed Hasan's clinical findings but didn't discuss them with any specificity or explain why he considered them inconsistent with Hasan's reaching restrictions. *See* R. 577–78. Instead, it appears the ALJ independently evaluated Hasan's objective findings and substituted his own judgment for Hasan's. This is improper. *Rohan v. Chater*, 98 F.3d 966, 970–71 (7th Cir. 1996). The ALJ's unsupported decision to discount Hasan's reaching restrictions requires remand for a proper evaluation of Hasan's opinion.

## B. Beyer's opinion

In 2007, Beyer restricted Sund-Summerfield to occasionally reaching below or at shoulder level and never reaching above shoulder level. R. 229. He reaffirmed these restrictions in 2009, 2013, and 2017. R. 574. He based them on Sund-Summerfield's pain and restricted range of motion in her right shoulder. R. 315.

Regulations in effect when Sund-Summerfield filed her claim required the ALJ to give controlling weight to Beyer's opinion as a treating physician if it was well-supported and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). To discount the opinion of a treating physician such as Beyer, the ALJ must offer good reasons for doing so. *Scott*, 647 F.3d at 739. The ALJ

provided three reasons for his decision to give little weight to Beyer's reaching restrictions: (1) he believed that they didn't account for improvement in Sund-Summerfield's symptoms and functionality; (2) he found them inconsistent with the findings of three examining physicians; and (3) he noted significant gaps in Sund-Summerfield's treatment record with Beyer. The ALJ said that the most important reason for giving little weight to Beyer's opinion as a whole was the fact that Beyer's handling, fingering, and feeling limitations weren't well-supported by objective medical evidence. R. 575–76. But he didn't criticize Beyer's reaching restrictions on this ground. *See id.*

### 1. Improvement in symptoms and functionality

In explaining why he thought Beyer failed to account for improvement over the course of Beyer's treatment of Sund-Summerfield, the ALJ cited Beyer's notes from 2007, 2008, and 2013. In 2007, Beyer observed that Sund-Summerfield could abduct her right shoulder only to 30–40 degrees and that she had limited external rotation and virtually no internal rotation. R. 575. In 2008, Beyer observed reduced right-shoulder strength but didn't mention any limitations to her internal rotation. *Id.* And in 2013, Beyer found minimal internal and external rotation with limited abduction but didn't mention any reduced strength. *Id.*

The ALJ thought that these notes indicated two areas of improvement. First, Beyer observed internal rotation limitations in 2007 but not in 2008. But even if Beyer's failure to note such limitations in 2008 wasn't simply an inadvertent omission, any improvement to her internal rotation ability didn't last, as Beyer also found internal rotation limitations in 2013. And the ALJ ignored the fact that Beyer noted "decreased motion" in her right shoulder in 2008, observing reduced exterior rotation and adduction capabilities. R. 317. Second, Beyer observed reduced right-shoulder strength in 2008 but not in 2013. But Beyer's reaching

restrictions didn't rest on a reduction in strength. After all, Beyer first issued those restrictions in 2007, when he didn't note any reduction in strength. So even if Sund-Summerfield's strength improved between 2008 and 2013, that improvement has no bearing on the validity of Beyer's 2007 reaching restrictions.

When Beyer reaffirmed his restrictions in 2013 and 2017, he said that there were no changes in Sund-Summerfield's condition that would change his restrictions. R. 495; R. 675. In examining her over the years, he consistently found limitations to her range of motion upon which he based his reaching restrictions. The ALJ didn't identify any documented improvements in Sund-Summerfield's condition that undermined those restrictions.

## 2. Consistency with examining physicians' findings

The ALJ criticized Beyer's objective findings as inconsistent with those of three agency examining physicians: Hasan, William Schneider, and Glenn Ciegler. R. 575. Under the regulations, an ALJ may discount a treating source's opinion if it is inconsistent with other medical-record evidence. 20 C.F.R. § 404.1527(c)(2). But the ALJ didn't explain why he thought Beyer was entitled to less weight than the other doctors. He didn't explain at all why he found Hasan's findings inconsistent with Beyer's. He noted that Schneider found normal passive range of motion in Sund-Summerfield's right shoulder and that Ciegler observed 130 degrees of internal rotation but extremely poor forward elevation in that shoulder. But he didn't explain why the inconsistencies he noted between the findings of Beyer, who treated Sund-Summerfield several times over a lengthy period, and those of Schneider and Ciegler, each of whom examined her only once, led him to discount Beyer's findings. He also ignored evidence from the examining physicians' reports that demonstrated Sund-Summerfield's reduced range of motion in her right shoulder. Ciegler found that she had "extremely poor"

forward rotation in her right shoulder and that her internal rotation was limited on the right side compared to the left. R. 497. And the court has already addressed Hasan's extensive clinical findings regarding Sund-Summerfield's range of motion limitations. An ALJ cannot "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding," *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), and it appears the ALJ did so here.

The ALJ didn't adequately explain why inconsistencies between Beyer's objective findings and those of the agency's examining physicians led him to discount Beyer's reaching restrictions, so these inconsistencies aren't a good reason for doing so.

### 3. Gaps in the treatment record

The ALJ noted "significant gaps" between Sund-Summerfield's visits to Beyer, noting that although he was "technically a 'treating source,'" he "[was] not a routine treating source but more like a periodic examining source." R. 576. But Beyer treated Sund-Summerfield on several occasions over a period of many years. Gaps in the treatment history of a treating source cannot justify the decision to give more weight to opinions from sources who only examined Sund-Summerfield one time. *See* 20 C.F.R. § 404.1527(c)(2).

None of the ALJ's reasons for discounting Beyer's reaching restrictions justify the ALJ's decision to do so. Remand is required for this reason as well.

## C. Remedy

Sund-Summerfield says that her record warrants instructions to the agency to award benefits. This remedy is within the court's power only in "unusual cases" in which "the relevant factual issues have been resolved and the record requires a finding of disability." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018). The court acknowledges the unusual length of

Sund-Summerfield's case, which spans nearly 15 years and includes five administrative hearings and three federal lawsuits. But a long procedural history isn't enough to allow the court to order the agency to award benefits. *See Israel v. Colvin*, 840 F.3d 432, 433 (7th Cir. 2016) (declining to direct award of benefits despite "many years of review, error and delay" by agency because uncertainties remained in record). In this case, the court cannot say that the record unambiguously requires a finding of disability.

CONCLUSION

The ALJ did not provide sound reasons for his decision to discount Hasan and Beyer's reaching restrictions. On remand, the ALJ must either include these restrictions in his RFC or adequately explain his decision to discount them.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of the Social Security Administration, denying plaintiff Jessica Sund-Summerfield's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered January 28, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge